MABELLE C. CARLSON, Appellee, v. JACOB E. DECKER & SONS et al., Appellants.

No. 41640.

582

MARCH 14, 1933.

REHEARING DENIED JUNE 23, 1933.

R. F. Clough, for appellants.

Helmer & Minnich, and Blythe, Markley, Rule & Dibble, for appellee.

MITCHELL, J.—Shortly after 3 o'clock in the morning of September 15, 1930, appellee and her husband left the town of Carroll, in a model A Ford coupé, intending to drive to Fergus Falls, Minnesota. They followed primary highway No. 71, which is a graveled road, and, according to appellee's testimony, traveled at a speed of from twenty-seven to thirty miles per hour. About 5 o'clock, when they had reached a point about two miles east of the town of Storm Lake, they came into collision with a truck owned by the appellant Jacob Decker & Son and operated by the appellant Larson, and the appellee received the injuries for which she now seeks to recover damages.

The principal grounds of negligence alleged by the appellee were (1) that appellants' truck was being operated more than one-half hour before sunrise without displaying headlights as required by law; (2) that said truck was being operated at a dangerous and excessive rate of speed, and in excess of that allowed by law; and

(3) that said truck was being operated partially or wholly on the left half of the traveled way, and that the driver of said truck failed to give one-half of said way by turning to the right as required by law. Appellants answered by a general denial, and on the issues joined the cause was tried.

At the close of all the evidence, appellants made a motion to withdraw from the consideration of the jury certain allegations of negligence, and for a directed verdict. The court overruled the motion and submitted the cause to the jury, and the main contention of the appellants, relied upon for reversal, was error in this ruling.

Appellee testified that about a mile east of the place where the collision occurred she and her husband passed a truck with lights burning. It was about 5 o'clock and was still dark. Her husband was driving the car, and the lights on their Ford car were burning. The road was a graveled road. She watched the road and did not see any truck approaching. She did not see any lights, and did not see anything coming down the road.

Appellant Larson testified that he left Storm Lake a few minutes before 5 o'clock, and that he turned on his lights before leaving Storm Lake and they were still turned on at the time of the collision. Vera Mullaney, who was riding with Larson, testified that the right front light was still burning after the accident. A few moments after the accident occurred, two men approaching from the east in a Buick car were stopped by Larson. These were the first people to reach the scene of the accident after the collision, and at Larson's request they took him and Miss Mullaney to Storm Lake, where Larson got another driver for the appellant Decker & Son to go with him to the scene of the accident. This driver, Billings, testified that he examined the truck and found the left headlight broken, but that the right headlight was burning, and he turned off the switch. Both of the men who were in the Buick car testified that there were no lights burning on the truck when they arrived at the place of the collision.

It appears from the record that some few feet west of the place where the collision occurred there is a culvert, and about forty rods west of the culvert there is a hill. Larson testified that he was driving about thirty or thirty-five miles per hour when he came over this hill, and that he saw the lights of the Ford car about half a mile away. Immediately after the accident, the appellant Larson went back to Storm Lake and reported the accident to the sheriff of Buena

Vista county. The sheriff testified that he asked Larson how fast he was driving, and that Larson told him he thought he was going about forty or forty-five miles an hour over the top of the hill. Appellant Larson claimed that he applied his brakes as he came down the hill and that he was traveling but little more than twenty miles an hour when he crossed the culvert. Vera Mullaney testified that he was traveling fifteen to twenty miles an hour when he crossed the culvert; but Susie Carey, a witness for the appellee, testified that Vera told her a few minutes after the accident occurred, that Larson was driv· ing about thirty-five miles an hour. This was denied by Vera. The record shows that the truck proceeded for a distance of some fifty to sixty feet east of the place where the collision occurred, and ran off the road, through a ditch two feet deep and seven feet wide, through a fence, and into the field adjoining the road on the south. Appellant Larson and his lady companion both testified that the truck was traveling on the right-hand, or south, side of the highway, and that the car in which appellee was riding was traveling on its left-hand, or south, side of the road. Appellee testified that the car in which she was riding was traveling on its right-hand, or north, side of the highway. The witness McKenna testified that he saw tracks, which appeared to be truck tracks, in the center of the road ten to twenty feet east of where the Ford coupé was standing, and that the tracks went off to the south across the ditch and into the field where the truck was standing. The north side of the road was pretty well marked up with tracks, and looked as if something had been scraped over part of it. The Ford car, after the collision, was facing east, with the right wheels on the gravel and the left wheels in the gutter. There was a skid mark about two feet south of the road and four feet south of the gravel, a continuous mark made by the Ford as it skidded around and faced the east. There was con- siderable evidence introduced in regard to tracks. The Buick car that took Larson and the Mullaney girl in to town stopped at the scene of the accident, and by the time that Larson and Billings had come out from town several other cars had stopped there. Some had stopped east of the place where the collision took place and some had driven on through.

Thus the record shows clearly that there was plenty of evidence to justify the court in submitting this question to the jury, and plenty of evidence from which the jury could find that there were no lights on the truck at the time of the collision; that it was traveling at a

high and dangerous rate of speed; and that it was being operated on the wrong side of the road at the time of the collision.

The questions raised by the allegations of negligence were properly for the determination of the jury. There was no error at this point.

■ The appellants argue that the appellee was, as a matter of law, guilty of contributory negligence, and cite the case of Sheridan v. Limbrecht, 205 Iowa 573, 218 N. W. 278. The court in that case, at page 576 of 205 Iowa, 218 N. W. 278, 279, said:

"Under the statute, lights were due at 30 minutes after sundown. Defendant's lights were not on. Did this failure operate as a proximate cause? Or did it prevent the plaintiff from discovering the approach of the automobile? The evidence is undisputed that it was not yet dark. The day had been a clear day, and the evening was likewise. The street lights were not yet on. The plaintiff testified that his own lights were on, and that he saw lights on an east-bound automobile. No other automobile lights were observed by any witness."

In the case at bar the evidence shows that the accident occurred a few minutes after 5 o'clock a. m., and that it was dark at the time the collision took place. The evidence shows that the sun rose on that morning at one minute past six o'clock, so that the collision occurred approximately an hour before sunrise. The evidence shows that the appellee was watching the road at the time of the collision. She testified that she saw no lights. There is substantial evidence in the record to show that the appellants' truck was being driven without lights. Then, clearly, appellee could not be charged with contributory negligence in not seeing the truck, and the absence of lights on the truck could well be the proximate cause of the collision.

■ The appellants further complain because the court, in instruction No. 1, submitted to the jury the question of damages to the appellee for loss of time, of which there was no evidence as to the value. There is no evidence as to the value of appellee's services. The record shows that she was a housewife. A reading of the instruction will disclose, however, that the court did not submit this question to the jury. The question of damages is included in instruction No. 11, and in that instruction the court does not direct the jury that, if it found for the appellee, to allow her anything for loss of time, the instruction being as follows:

"If you find a verdict for plaintiff, you should award her such a sum as in your sound discretion under the evidence and these instructions will reasonably and fairly compensate her for the damages you find from the proof before you that she sustained. You should allow her for medical, hospital, nursing and ambulance service, permanent disfigurement and for pain and suffering, as each of said items are shown by the evidence, if any, and award her such a sum as meets with your well considered and deliberate judgment as to any or all of such items."

Appellants raise some other minor objections to instructions given by the court, all of which have been carefully considered by this court. Upon a careful reading of the record, we come to the conclusion that the case was a question for the jury, and that it was submitted to the jury under proper instructions.

This cause must be, and it is hereby, affirmed.

KINDIG, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.