MABELLE C. CARLSON, Administratrix, Appellee, v. JACOB E. DECKER & SONS et al., Appellants.

No. 42300.

April 3, 1934.

R. F. Clough, for appellants.

Helmer & Minnich and Blythe, Markley, Rule & Dibble, for appellee.

Donegan, J.—This action grows out of an automobile accident which occurred on highway No. 71, about 2 miles east of the city of Storm Lake, Iowa. About 3 o'clock on the morning of September 15, 1930, Wallace C. Carlson and Mabelle C. Carlson, his wife, left their home in Carroll, Iowa, and traveled to the point of collision, a distance of 53 or 54 miles, without stopping. At the time they reached the place of the accident it was about 5 o'clock. The moon had already gone down some time before and the sun did not rise until 6:01 a. m. on that day, so that it was still dark. As Carlson and his wife were proceeding westward on this highway, which is a graveled road about 24 feet in width, the automobile in which they were traveling collided with a truck owned by Jacob E. Decker & Sons and driven by Lester N. Larson, and as a result of this collision Wallace C. Carlson received injuries from which he died a few hours thereafter.

Mabelle C. Carlson was appointed administratrix of his estate and brought this action in behalf of the estate. Another action

brought by Mabelle C. Carlson in her own behalf was tried and appealed to this court and the opinion in that case may be found in 216 Iowa 581, 247 N. W. 296. Upon the trial of the case the defendants moved for a directed verdict in their favor at the close of plaintiff's evidence, and renewed such motion with additions thereto at the close of all the evidence. The motions for a directed verdict were overruled and the case submitted to a jury which returned a verdict in favor of the plaintiff for $5,000. Exceptions to instructions and motion for new trial were filed by the defendants and on being overruled an appeal was taken to this court.

Appellants set out thirty-nine errors relied upon for reversal. Obviously, it is impossible to discuss each of these errors separately, and we shall, therefore, confine our discussion to the propositions argued by the appellants in which some of the alleged errors are grouped and argued together.

I. The first proposition argued by the appellants is, that the court should have sustained the appellants' motion for a directed verdict because of the contributory negligence of the decedent, Wallace C. Carlson. The appellant Lester N. Larson, who was the driver of the truck with which Carlsons' automobile collided, and a young lady named Vera Mullaney, who was riding in the truck with with him at the time, both testified that as they approached the point where the accident occurred, Larson was driving the truck upon the right-hand side of the graveled highway within 2 or 3 feet of the edge of the gravel; that they saw the Carlson car approaching for some time and saw that it was on the south or wrong side of the graveled highway; that Larson slowed down his truck and pulled over farther to the right or south edge of the gravel; but that the Carlson car apparently made no attempt to turn to the north or right side of the road until just a few feet before the car and the truck came together. It is undisputed that there were headlights on the car driven by Carlson, and both Larson, the driver of the truck, and Miss Mullaney claimed that the headlights were burning on the truck as they approached the Carlson car. The appellants contend, therefore, that the evidence conclusively shows that Wallace C. Carlson, the decedent, was guilty of contributory negligence in driving on the south or wrong side of the road and in failing to turn to the right and give the truck one-half of the traveled portion of the road when passing.

Wallace C. Carlson, the decedent, died within a few hours after

the accident, and there is no evidence in the record to show what he may have observed as he approached the scene of the accident. Mabelle C. Carlson testified as a witness. She stated that the moon had gone down some time before they reached the scene of the accident; that it was not yet daylight; and that it was still dark enough that one needed lights to see. In her testimony she said:

"I was watching the road all the time. Our car was over on the north side of the road. It is a wide graveled road, plenty of room for two cars to pass. We were way over on the north side, there was about a foot of gravel on our right, and then the grass. I didn't see any lights ahead of us at all. Mr. Carlson was awake and we were talking as we rode along. I did not see any object in the road ahead of us as we went west."

As we shall later see, there is other evidence in the record tending to show that the headlights on the truck were not lighted, that the truck was driving on the wrong side of the road and at a high rate of speed. This evidence and the testimony of Mrs. Carlson, when contrasted with the testimony of the appellant Larson and Miss Mullaney, make it quite apparent that there is a sharp conflict in the evidence. This being the case, the question as to the decedent's contributory negligence was one for the jury.

II. Appellants contend that there was no evidence to support the allegation that the truck was being driven without proper lights, and that the court erred in submitting this ground of negligence to the jury. As we have already seen, Mrs. Carlson stated that their automobile was on the north side of the road and within a foot or so of the edge of the gravel, and that she was looking ahead all the time and did not see any lights approaching from the opposite direction. Both the appellant Larson and Miss Mullaney claimed that the lights on the truck were lighted before and at the time of the accident, that the left headlight was broken in the accident, but that the right headlight was still burning after the accident. Another witness, Billings, who came to the scene of the accident with Larson, when the latter returned there after having been taken to Storm Lake, testified that the right headlight was still lighted when he arrived and that he turned it out. A man named Dubbs and his son who were driving westward were the first persons to reach the scene of the accident, and arrived there within a very few minutes after it occurred. They both testified that it was then dark, that they stopped

when hailed by Larson and Miss Mullaney whom they took into Storm Lake, but that, while they saw the wrecked Ford, they did not see the truck or any light upon it. After taking Larson and Miss Mullaney into Storm Lake and notifying the marshal of the accident by telephone, Dubbs and his son immediately returned to the scene of the accident. Both stated that it was still dark when they returned, that no other person was there at that time, that they observed the truck but saw no light on it, and Dubbs stated that if there had been a light on the truck he would have seen it. A Mr. McKenna, who lived about sixty rods east of the scene of the accident, heard the crash and went to the scene of the accident reaching there probably about 5:20. He stated that when he got there it was just starting to get daylight and that he saw the truck but that he did not remember seeing any light on it. No matter how positive the testimony of Larson and Miss Mullaney may be as to the lights being on as they approached the scene of the accident, and as to the right light still remaining on after the accident, and no matter how positive the witness, Billings, may be that the right light was still on when he reached the scene of the accident and that it was turned off by him, the testimony of Dubbs and his son and of McKenna, taken in connection with the testimony of Mrs. Carlson, presented a conflict in the evidence which could only be determined by the jury.

III.   Appellants also contend that the court erred in submitting to the jury the ground of negligence which charged that appellants' truck was on the wrong side of the road. Both the appellant Larson and Miss Mullaney testified positively that the truck was on the right or south side of the road and within 2 or 3 feet of the edge of the gravel, and that as Carlsons' car approached Larson turned the truck still further toward the edge of the gravel. There is also the testimony of the witnesses for the appellants who claimed to have made an examination of the road after the accident, and to have observed skid marks of the wheels showing that the truck was on the right or south side of the road at all times as it approached and reached the scene of the accident. On the other hand, there is the testimony of Mrs. Carlson that she was watching the road ahead, that they were way over to the north side, and that there was about a foot of gravel to their right and then the grass. There is also the testimony of McKenna and of Dr. Gran who reached the scene of the accident before the bodies were removed, who both testified as to skid marks apparently made by the Ford in which the Carlsons

were riding, and which would tend to show that the Ford was on the north side of the road at the time of the accident. There is other evidence tending to show that the wheel marks of the truck at or about the scene of the accident were well over to the middle portion of the road, and there is still further evidence that the examination made by appellants' witnesses in regard to the wheel marks of the truck was made after several cars had gone over the road at the place of the accident and that it was impossible to tell anything from these skid marks at that time. Here again there was a conflict in the evidence which made a question for the determination of the jury.

IV. Appellants allege error on the part of the trial court in submitting to the jury the question of the speed of appellants' truck. It is undisputed in the evidence that the truck and the load which it was then carrying weighed more than three tons. Under the law then in force, it would have been a violation of the statute for such a truck to travel at a speed in excess of 25 miles per hour. It appears from the evidence that the collision occurred about 15 feet east of a culvert which extends across the road; that from this culvert to the top of the hill to the westward is about sixty rods; that about twenty to thirty rods west of the culvert there is an intersecting north and south road; and that to the west of this intersecting road and on the north side of highway No. 71 there is a cemetery. The appellant Larson admitted in his testimony that as he came down the hill by the cemetery he was driving the truck about 35 miles per hour, and there is further testimony as to an admission made by him that the truck· was traveling from 35 to 40 miles an hour. He also testified:

"When I was just about at the intersection I knew that the Carlson car was being driven on the south side of the highway as it was coming west toward me, the intersection is twenty to thirty rods from the culvert. It is my opinion that the car was coming toward me at a speed of at least forty miles an hour. The Carlson car was about twenty or thirty rods east of the culvert when I first noticed it was on my side of the road."

According to Larson's own testimony, therefore, the Carlson car and the truck were both about the same distance from the culvert when he was at the intersecting road and began to apply his brakes. As the collision occurred about 15 feet east of the culvert, the truck would have traveled 30 feet farther than the Carlson car

after Larson claims to have begun to apply his brakes. Mrs. Carlson stated that the Carlson car was traveling about 27 to 30 miles an hour. Even if the Carlson car was traveling only 27 miles per hour, which is the lowest estimate of its speed, the truck must have been traveling still faster as it passed from the intersecting road to the point where the collision occurred. If, as claimed by the appellant Larson, the Carlson car was approaching him at a rate of 40 miles per hour, then his truck must have covered the distance from the intersecting road to the point of the collision at a still greater speed. The evidence shows, moreover, that although Larson claims to have put his brakes on so hard when he reached the culvert as to cause the wheels to skid, the truck continued going forward after the collision, passed over a ditch between the graveled portion of the road and a fence about 20 feet south thereof, and went through a woven wire fence and into a plowed field, where it came to rest with the rear wheels about even with the line of the fence at a point about 75 feet east of the culvert. We find no error on the part of the trial court in submitting the question of the speed of the truck to the jury.

V. Among the grounds of negligence submitted to the jury was the claim of the appellee:

"That said Larson, at said time and place, and when driving said truck, knew, or should have known, of the danger of collision, and had sufficient opportunity to so operate said truck as to avoid collision, and that he negligently failed to do so."

Appellants urge that the court erred in thus submitting this allegation of negligence to the jury, because, they claim, the evidence conclusively established that the lights were lighted on said truck at and before the time of said collision, and that the appellant Larson operated the truck upon the south or his right half of the highway, put on his brakes, slowed his truck to 12 or 15 miles an hour, and complied with the requirements of the law in every respect. Of course, if certain portions of the testimony of Larson and of Miss Mullaney be taken as conclusive, without reference to other portions of their testimony, and without reference to other evidence in the record, we would then have to accept the appellants' contention. However, as we have seen in the preceding divisions of this opinion, there is a conflict in the evidence as to whether or not the lights upon appellants' truck were lighted, as to the portion of the highway upon which the truck was being operated, and as to the speed

at which it was being driven. There is evidence in the record from which the jury might accept the appellee's view as to all of these matters. The allegation of negligence of which complaint is here made is one which the evidence that we have already referred to in preceding divisions would amply support, and there was no error on the part of the trial court in submitting it to the jury.

VI. Appellants also complain of the trial court's failure to submit to the jury a form of verdict which would have permitted judgment against the defendant Larson only, and judgment in favor of the defendant Jacob E. Decker & Sons. Certain evidence was admitted in regard to admissions made by the defendant Larson. This evidence was admitted as against the defendant Larson, alone, and not as against the defendant Jacob E. Decker & Sons. The jury was so informed at the time of the admission of the evidence, and in his charge to the jury the trial court gave the following instruction:

"Evidence has been received of purported admissions made by the defendant Lesler N. Larson after the accident. You are instructed that evidence of such admissions is not admissible as against the defendant Jacob E. Decker & Sons, and that it cannot be considered by you in determining whether or not said defendant, Jacob E. Decker & Sons, is liable to the plaintiff; and you are instructed that the defendant Jacob E. Decker & Sons could only be held liable by reason of proof of negligence of its employee, Lester N. Larson, by a preponderance of the evidence, and unaided by any of such claimed admissions."

The court instructed the jury as to the form of verdict to be used in case they found for the plaintiff and against the defendants, and also as to the form of verdict they should use in case they did not find the plaintiff entitled to recover against the defendants. No form of verdict was submitted to the jury to be used in case they found against the defendant Larson, only, and not against the defendant Jacob E. Decker & Sons, and the appellants contend that the failure to submit such a form of verdict constitutes reversible error.

The instruction given to the jury, as set out above, is a verbatim copy of an instruction asked by the appellants. No further instruction in reference to this matter was asked by them. We think that this instruction made it very clear to the jury that they could not

consider the admissions made by Larson as against the defendant Jacob E. Decker & Sons, and we think that the jury must have understood from this instruction, and from the other instructions given by the court, that Jacob E. Decker & Sons could not be held liable to the plaintiff except upon evidence, other than the admissions of Larson, tending to establish such liability.

In Shelberg v. Jones, 170 Iowa 19, 151 N. W. 1066, there were several defendants and the court submitted only two forms of verdict, one in favor of the plaintiff and against the defendants, and the other in favor of the defendants. No separate form was submitted to be used in case the jury found against some of the defendants and in favor of others. In refusing to reverse on that account, we said:

"Under the instructions given upon the subject of liability, both joint and individual, of the defendants in case plaintiff was found entitled to a verdict, it would be an impeachment of the intelligence of the jurors to say they could have been confused upon this proposition."

We do not think it can be said that the jury was confused by the instructions and forms of verdict submitted to it in this case, and, in the absence of any request for further instructions on the part of the appellants, we find no reversible error in this regard.

Many of the errors assigned by the appellants have reference to instructions given or refused, and one of such errors has reference to the size of the verdict. None of these matters have been presented in argument by appellants. We may say, however, that we have examined the instructions given by the court as well as those asked by the appellants and refused, and that we find no reversible error in connection with them. We may further say that the size of the verdict rendered in this case is fully supported by the evidence.

For the reasons above stated, the judgment of the trial court is hereby affirmed.—Affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, KINDIG, MITCHELL, and KINTZINGER, JJ., concur.