JOHN A. ELLIOTT, as Administrator of the Estate of ISAAC C. PENROSE, Deceased, Appellant, v. CAPITAL CITY STATE BANK, Appellee.

**Action upon certificate of deposit:** DENIAL OF SIGNATURE: EVIDENCE:

1  INSTRUCTION. In this action upon a bank's certificate of deposit which appeared to have been endorsed to plaintiff's intestate, there was no express denial of the genuineness of the endorsement although perhaps it might be implied from the language of the

pleader. Evidence was admitted tending to show that the endorsement was not on the certificate at any time prior to the death of the supposed endorser. *Held,* that even though the evidence was not admissible under the statute relating to the verification of an answer in case of the denial of the genuineness of the signature, the court's instruction that under the evidence and the law plaintiff had made a clear title to the certificate cured any error there may have been in the admission of the evidence.

**Same:** LIMITATION OF ACTION: EVIDENCE: INSTRUCTION. The certificate of deposit involved in this action was issued to the wife and bore her purported endorsement to her husband. Both the husband and the wife were dead and the bank's papers had been destroyed. The bank pleaded payment and the statute of limitations, its theory being that a duplicate certificate had been issued to the wife and paid to her, and that the endorsement on the original was made by some one else after her death, but did not expressly deny the genuineness of the endorsement. Evidence of a demand by the wife on the bank, which would start the statute of limitations running, was admitted. *Held,* that the court's charge that from the time the certificate was issued to the wife she must be deemed the legal owner, but that after endorsement, if made, and delivery she would not be the owner, properly submitted the issue of limitation, and was not objectionable as submitting the issue of the genuineness of the endorsement.

**Same:** EVIDENCE. Evidence of the poverty of the holder of a certificate of deposit is admissible in support of a contention that a duplicate had been issued and paid, and to rebut the presumption of nonpayment arising from its possession uncanceled.

**Same:** DELAY IN DEMANDING PAYMENT: PRESUMPTION: EVIDENCE. Evidence of long and unexplained delay in demanding or attempting to enforce payment of a certificate of deposit is competent and may be considered as tending to rebut the presumption of nonpayment arising from the holder's possession of the instrument uncanceled.

**Same:** LIMITATIONS: DEMAND FOR PAYMENT. The only evidence of demand for payment of the certificate involved in this action, which would start the running of the statute of limitations, related to a time eighteen years prior to the commencement of the action. *Held,* that an instruction that if demand was made at any time more than ten years prior to commencement of suit the action was barred, was not objectionable as permitting a finding of a demand at any time between that testified to and ten years preceding suit; as the precise date of demand was not material provided it was made ten years prior to action.

Instructions: EFFECT OF FAILURE TO REQUEST. A party can not object on appeal to instructions on the ground that they fail to state the rules of law with sufficient completeness, where that point was not made on the trial by request for further instructions.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

FRIDAY, NOVEMBER 18, 1910.

ACTION at law upon a certificate of deposit. Verdict and judgment for the defendant, and plaintiff appeals— *Affirmed.*

*Dale & Harvison,* for appellant.

*Read & Read,* for appellee.

WEAVER, J.—This action was begun December 24, 1903, upon a certificate of deposit issued by defendant for $1,500 bearing date March 23, 1885, payable on demand to the order of Mary J. Penrose, and purporting to be indorsed by the payee to Isaac C. Penrose, the plaintiff's intestate. Plaintiff also traces ownership of said instrument to himself through another line of indorsements, but the question of his right to sue may be regarded as beyond question if the certificate be a valid and enforceable obligation. Upon filing the original petition, defendant demurred thereto on the ground that the action was barred by the statute of limitations. The demurrer being sustained, plaintiff appealed to this court and obtained a reversal of the ruling. See *Elliott v. Bank,* 128 Iowa, 275. Thereupon the cause was remanded to the trial court where the defendant answered pleading payment of the certificate, and further alleging that in the year 1885 Mary J. Penrose, then being the owner of the certificate, demanded payment thereon, which demand had the effect to set the

statute of limitation running, and that the bar became complete before this action was begun. A second trial resulted in a disagreement of the jury, but upon the third trial verdict was returned for the defendant. It is from the judgment entered upon this verdict the present appeal is prosecuted. The sufficiency of the evidence to sustain the verdict is not questioned by counsel, but reliance is placed for a reversal of the judgment below upon alleged errors occurring at the trial. It may be well, however, to state certain facts which for the most part are undisputed in order to see more clearly the bearing of the several points and assignments of error made in behalf of the appellant.

At the date of the certificate in suit, A. W. Naylor, the brother of Mary J. Penrose, was president of the defendant bank, and continued his connection therewith until the year 1888, when he withdrew therefrom, and removed to California, where he had since resided. In 1885 Mrs. Penrose was a resident of Kansas, and, having received $1,500 insurance upon the life of a deceased member of her family, sent it to her brother for deposit in the bank over which he presided. In the fall of the year 1885, the Penrose family removed from Kansas to California, where they remained until the death of both wife and husband. As a witness, Naylor was at first somewhat confused and indefinite in his recollections concerning this item of deposit, but, on reflection and refreshing his memory in various ways, he swears that in the year 1885, about the time his sister removed from Kansas to California, she wrote him a letter saying that she had lost or mislaid the certificate, and requested him to send her the amount of money it represented. In response to this demand, he says he sent her the full amount due with a duplicate certificate for her to indorse and return. Later he received a letter acknowledging the receipt of the money and the duplicate draft duly indorsed. These papers were filed

with the vouchers of the bank. To account for the non-production of these papers evidence was produced that the books and papers of the bank covering the time in question had been destroyed. As bearing upon the probability of the truth of Mr. Naylor's story, it was also shown that he is not, and for many years has not been in any manner connected with the bank, and has no apparent interest in defeating the claim made in behalf of his sister's family; that Mrs. Penrose and husband were at all times people of small means; and that, so far as appears, after the year 1885 no member of the family or other person ever heard either of them mention the certificate or assert any claim to a deposit in this bank, and the existence of the certificate was wholly unknown to the heirs until some six years after the death of Isaac Penrose, when it was found in an old pocketbook which had belonged to him. Mrs. Penrose died in 1894, and her husband died in 1897. Aside from the value, if any, of this certificate, the husband left a very small estate and his wife left none. During the last years of his life, Isaac Penrose was upon the losing side of some small real estate deals, and had on several occasions borrowed small sums at a bank, and complained of being "hard up." Other circumstances are relied upon by the defendant as supporting its plea of payment, but we think it unnecessary to further prolong this statement. In a brief which gives evidence of much painstaking labor and investigation, counsel for appellant call our attention to the alleged errors of the trial court, and the proposition of law believed to be applicable to the record so presented. These are entirely too numerous for us to attempt their discussion in detail within the reasonable bounds of a written opinion, and we shall content ourselves with referring as briefly as practicable to those which appeal to our minds as being of principal importance. Speaking generally, the exceptions taken by the appellant go, first, to rulings upon

objections to the introduction of evidence; and, second, to the court's charge to the jury.

I. The answer as it stood during the progress of the trial contained a count denying the plaintiff's title to the paper sued upon, and in support of such denial evidence was offered and admitted over plaintiff's objection tending to show that, when the certificate was first presented to the bank after its discovery in the year 1903, it did not bear the indorsement of Mary J. Penrose, who had then been dead several years. The effect of this testimony was, of course, to sustain the theory that her purported indorsement had been placed upon the instrument by some other person without authority to do so. If we understand counsel correctly, their proposition is that the answer did not put in issue the genuineness of this signature, and the testimony was therefore not competent evidence under the rule of Code, section 3640, relating to the verification of answers in such cases. Were the question a material one upon this appeal, we should incline to the opinion that, while the genuineness of the signature is not denied in express terms, it is fairly implied in the language used by the pleader, and that the evidence was competent. How the manner of pleading it may have affected the burden of proof we need not here undertake to say.

*1. ACTION UPON CERTIFICATE OF DEPOSIT: denial of signature: evidence: instruction.*

It should further be said that, the person whose signature was questioned being dead, it is at least doubtful whether the statute cited has any application. But the question raised is rendered entirely immaterial for the purpose of this case, because, at the close of the testimony, the court withdrew from the jury the issue made by the denial of the plaintiff's title and charged in substance that such title was established as a matter of law, and that the jury must confine its inquiry to the other defense pleaded, to wit, payment and the statute of limitations. We will

presume that the jury observed the instructions of the court in this respect.

But it is said that the court did, in fact, submit to the jury the genuineness of this signature.    If by this it is meant that the court in any manner permitted the jury to go into a consideration of the genuineness of the signature as affecting the matter of plaintiff's title to the instrument or his legal right to bring suit thereon, the point is not sustained by the record.    The paragraph on which this criticism is based has relation solely to the plea of the statute of limitations. The plea was based entirely upon the theory that the payee, Mary J. Penrose, did in the fall of 1885 call upon the bank for the money due upon the certificate, and that, if payment was not then in fact made, her demand operated at least to set the statute of limitations in motion.    Referring to this situation, the court said to the jury in substance that if Mrs. Penrose did then demand payment, and she was then the owner and holder of the certificate, the defense of the statute of limitations must prevail, even though the plea of payment had not been made out.    In stating the proposition, the court further said:    "From the time that said certificate of deposit was issued by the defendant bank to the said Mary J. Penrose to the time she indorsed the same on the back thereof, 'Pay to the order of I. C. Penrose (Signed) M. J. Penrose,' if she did so indorse said certificate, and delivered the same to the said I. C. Penrose, the said Mary J. Penrose will in law be deemed the legal holder and possessor thereof. After such indorsement and delivery, however, she would not be deemed in law the legal holder and possessor thereof." The legal proposition thus announced was certainly correct and pertinent to the issue then being submitted.    Whether such demand was made, whether Mrs. Penrose was then still the owner and holder of the certificate, or had already indorsed and delivered it to another person, are the vital

2. SAME: limitation of action: evidence: instruction.

questions of fact upon which this particular defense must stand or fall, and we think it was sufficiently well pleaded to admit of any testimony having any legitimate tendency to establish the truth of the matter, and, if the testimony was admissible, an instruction as to the legal effect of the facts so established was a proper matter to be given to the jury.

Error is also assigned upon the admission of testimony concerning the financial condition of Mary J. Penrose and husband from the year 1885 during the remainder of their lives. The objection can hardly be urged by counsel with much confidence. Except Naylor, the only persons who could have spoken from personal knowledge concerning the alleged payment are dead. Many years have intervened, and papers and documents which might have been of great value as evidence have been lost or destroyed. The recollection of the only living witness who figured in the transaction has in some respects become dim and uncertain. In the very nature of things, resort must be had to circumstantial evidence if we would find the truth with any degree of satisfaction. That this woman should send the fund which represented her entire fortune from Kansas to the bank of her brother for safe-keeping and subject to her demand was a very natural act. That she or her husband should leave such money bearing a low rate of interest in the bank after her brother had severed all connection therewith, and after he and they had all removed to California, would be, to say the least, unusual, if not surprising. If then we add to that fact proof that from the date of this deposit to their death both husband and wife were persons of very small means, that even their small investments had proved unprofitable, that the husband was borrowing money and seeking to compromise claims against him, and that during all these years neither of them so far as shown revealed to one of their children or friends the existence of a fund of

3. SAME: evidence.

$1,500 waiting their demand in a solvent bank, it would be absurd to say that such proof has no proper bearing upon a plea of payment by the bank.   True, the fact that the paper is found in the hands of the plaintiff bearing no mark of payment or cancellation affords some presumption that it is still unpaid, but it is a rebuttable presumption and one which is materially weakened by extraordinary and long-continued laches of the holder in the assertion of any right thereunder.   1 Wigmore on Evidence, 159; *Manning v. Meredith,* 69 Iowa, 430; *Ludwig v. Black-shere,* 102 Iowa, 373; *Alston v. Hawkins,* 105 N. C. 3 (11 S. E. 164, 18 Am. St. Rep. 874), and note.

We need not now consider whether in this state conclusive presumption of payment will ever arise from the mere fact of any delay, however great, in collecting a debt, short of the statutory period of limitations. It is enough here to say that long and unexplained delay in demanding or attempting to enforce payment is a pertinent fact which may be put in evidence and considered as tending to rebut the presumption of nonpayment which attaches to the holder's possession of the uncanceled written promise. If standing alone, such laches would not sustain a plea of payment, yet we think it is nevertheless true that it may be a very persuasive circumstance to corroborate and support the testimony of a witness who swears of his own knowledge that payment was, in fact, made.   The value of such evidence is materially increased where the alleged creditor in the case is shown to have been in meager circumstances such as would induce an ordinary person to avail himself or herself of the comfort and relief to be derived from such funds and the debtor is solvent and able to pay on demand.   There was no error in admitting the testimony.

The court on objection of defendant refused to admit in evidence a letter by the defendant's cashier written after

suit was brought or threatened to a former cashier of the same bank requesting him to refresh his recollection concerning the certificate of deposit. Objection was also sustained to appellant's offer to show a conversation between a representative of the heirs and the cashier when a demand of payment was made just pior to the commencement of this action. We have examined the matters offered in evidence, and find them entirely immaterial to a determination of the issues there being tried. The objection to their introduction was properly sustained.

Other questions are raised upon matters of evidence which we can not extend this opinion to discuss. We have examined the record with reference thereto, and find no error.

. II. Of the instructions it is first said that the court erred in stating the issues. The point of this exception seems to be that the defendant pleaded a demand of payment alleged to have been made upon it in the year 1885 from the time of which demand the statutory limitation would begin to accrue and all the proof in support of said allegation related to the same date, while the court told the jury in substance that, if the demand was made at any time more than ten years prior to December 24, 1903 (the day when this suit was instituted), the defense was complete. It is said that said instruction permits the jury to disregard both the pleading and the evidence, and find a demand made at any time between 1885 and December 24, 1893. There is no merit in the objection. The instruction is a correct proposition of law as applied to this case. It is true that Naylor who alone testifies to the alleged demand places it in the fall of 1885 and the answer so pleads it, but the precise time was not material so long as it antedated the ten-year period prior to the beginning of the suit. The defense was not bound at its peril to prove the date exactly as alleged, nor was the jury bound to

5. SAME: limitations: demand for payment.

find a demand made on that exact date as a condition precedent to a finding for the defendant upon that issue. But one alleged demand was offered in evidence in this connection. The jury could not possibly have understood that it was at liberty to find any other demand, and it is inconceivable that appellant sustained any prejudice from this instruction.

It is further objected that the court (1) should have told the jury what would constitute a due and legal demand of payment; (2) should have instructed that the demand to be effectual must have been made by the then owner and holder of the certificate; (3) did not instruct that the payment to constitute a defense must have been made to the then legal owner and holder of the certificate; (4) did not define to the jury the meaning of "circumstantial evidence;" (5) told the jury to consider the circumstantial evidence as to all of the issues when some of it related to one issue only; (6) did not "properly direct the jury as to the degree of probative force necessary to make the circumstantial evidence of any value in determining the question involved."

Of the points thus made as well as those which we do not stop to enumerate it may be said first that some of them appear to be based upon an incorrect reading or misunderstanding of the charge as it was given by the court, while others would require the trial court to burden its charge with a wealth of legal learning tending to confuse, rather than aid, the jury in its deliberations.

Again, it seems to be conceded that in several of the instances mentioned the court instructed correctly so far as it went, but that it failed to state the rule with sufficient completeness. No request was made to cure
6. INSTRUCTIONS: such alleged defects and upon familiar prin-
effect of fail- ciples the error, if any, was waived. The
ure to request.
charge appears to be reasonably full, complete and fair. We think it must be said that no set of instructions ever

yet framed by a trial court could stand the test of an appeal if the severely critical and technical tests for which appellant contends were to be adopted and enforced by us. Instructions are of necessity prepared under more or less pressure to avoid interference with the progress of the business of the term.   They are addressed to jurors unskilled in law and unversed in legal phraseology.   To serve their purpose they should be brief, pointed and clear. If the court indulges in excessive minuteness of statement with respect to the law or facts, it is quite sure to envelop the case in darkness rather than light, and mislead and confuse the minds of the jurors.   The standards by which instructions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession.

This case is based on a transaction which took place twenty-five years ago.   It has been pending in the courts for nearly seven years.   It has been three times tried, once upon a law issue and twice upon the issues of fact, and we see no good ground for ordering a fourth trial. If there was any apparent failure of justice or indication that the parties have not had a fair trial, we should not hesitate to reverse, but a careful and candid examination of the facts, most of which are not the subject of material dispute, impresses us with the belief that no other result could have been reasonably expected, and that any other verdict than the one returned by the jury would have been properly set aside as being against the clear and decisive weight of the testimony.

The judgment of the district court is *affirmed*.