W. M. LUKIN, Administrator, Appellee, v. CHARLES MARVEL, Appellant.

No. 42775.

774

MARCH 12, 1935.

Frank J. Lund and Putnam, Putnam, Langdon & Fillmore, for appellant.

Burnstedt & Hemingway and Dyer, Jordan & Dyer, for appellee.

KINTZINGER, J.—At about 7:30 p. m. Sunday, October 15, 1933, in company with Helen McGlynn, Mrs. Scanlin, deceased, was driving a Plymouth two-door coach in a southeasterly direction on

highway No. 60 in Hamilton county, Iowa, several miles southeast of Webster City, when her car, after stopping, was struck by a car driven in a northerly direction by defendant. The point of collision was at the southeasterly end of a curve around which they had just driven. When approaching the southeasterly end of the curve the lights of her car revealed an automobile turned upside down in a depression on the east side of, and entirely off the traveled part of the roadway. She also observed a girl near the car waving her arms as if in distress. The decedent proceeded a short distance past the upset automobile, when she stopped and backed her car northerly on the westerly side of the highway to a point opposite the upset car.

Shortly before the collision in question, a Mr. Kennedy and his twenty-year-old daughter, Marian, had driven northerly upon the same road. When they reached the southeast end of the curve, Mr. Kennedy failed to make the turn safely and his car ran off the east side of the roadway into the ditch and upset. It was the Kennedy car and Marian Kennedy that Mrs. Scanlin observed as she rounded the curve.

There is much evidence that when the Scanlin car stopped, after backing up, it was on the right or westerly side of the center of the roadway, and at or near the westerly edge thereof. After backing up and stopping, decedent opened the left door, stepped out on the running board, and closed the car door. Her companion, Miss McGlynn, left the car through the west door, and testified that while the car was stopped, and while both were still on the car, they observed the lights on defendant's car approaching from the south. Before Miss McGlynn left the car, Mrs. Scanlin said: "There's a car coming—watch you step". Mrs. Scanlin was last seen standing upon the left running board of her car, with one hand holding onto the handle of the door, and the other through the open window of the door.

The roadway south of the place where the Scanlin car was stopped ran in a straight line north and south. The highway was 28 feet wide at the point of the collision, and for a long distance each way. The night was dark and it had been raining, but the rain had stopped before the collision occurred, and there is testimony that it was still misting. The headlights upon the Scanlin car were lighted and were seen by the defendant at a distance of about 800 feet as he approached from the south.

The items of negligence alleged, and submitted to the jury were: "(1) That he operated his automobile at such a speed that he could not stop within the assured clear distance ahead and avoid striking decedent's car; (2) that he drove his car across the highway and into the center of decedent's car as it stood stationary upon the highway". Other allegations alleged were substantially included in these two.

There were several road signs along the east side of the highway south of the curve. The most southerly sign was a "Pavement Slippery When Wet" sign about 400 feet south of the curve; the next was a "Turn" sign, about 100 feet north of the "Slippery Pavement" sign; the next was an "Iowa 60" sign with the letter "L" on it, about 180 feet north of the "Turn" sign, and about 150 feet south of the southerly end of the curve. The defendant testified that the headlights on his car were in good condition; that his windshield wiper was working; that he saw all of these signs as he passed them; and that he could see the edge of the roadway on both sides as he drove along. His lights were sufficiently bright to enable him to see the roadway about 100 feet ahead of his car, and he could see objects on the roadway a distance of 50 to 75 feet ahead. He further testified that after passing these signs he slowed his car down to about 20 or 25 miles an hour, and saw the lights of decedent's car about 800 feet ahead. He said that the night was dark, the road was black, and that he did not see the outline of decedent's car, and saw nothing back of its lights. He testified that he did not see the decedent or Marian Kennedy upon the roadway; and did not see the Kennedy car east of the roadway.

The testimony is without dispute that he struck the left side of the Scanlin car. After the collision his car proceeded about 60 feet northerly and to the other side of the road, and when it stopped, he walked back to the Scanlin car. He told Miss McGlynn he did not know what happened. Mrs. Scanlin was found on the roadway about 10 feet north of her own car, and was suffering from injuries to her body; her right leg being practically severed below the knee and was bleeding. Miss Kennedy's body was found on the roadway near Mrs. Scanlin. They were both taken to a hospital at Webster City. Mrs. Scanlin remained there a few days and was then taken to a hospital at Boone, Iowa. She died within a week; and, while not material to this case, the evidence shows Miss Kennedy died shortly after the accident. At the close of the evidence

a motion, made by defendant, for a directed verdict, was over-ruled, and the case was submitted to the jury, resulting in a verdict for plaintiff;—hence the appeal.

I. It is contended that the court erred in not sustaining de-fendant's motion for a directed verdict upon the ground that there was not sufficient evidence to establish negligence on the part of appellant.

If there was any evidence (1) that defendant was driving at such a rate of speed that he could not stop within the assured clear distance ahead; or (2) if, as he was about to meet or pass decedent's car, he failed to give her one-half of the roadway by turning to the right, without any justifiable excuse therefor, then the jury was warranted in finding him guilty of negligence.

■ (1) We have repeatedly held that under section 5029 of the Code 1931, it is the duty of automobile drivers to drive at a care-ful and prudent speed, and at such a rate that will permit the driver to bring his car to a stop within the assured clear distance ahead. This section provides:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

In most of the cases heretofore arising under this statute the damage was sustained by the car striking another car parked upon the highway without lights. It is the general rule that in such cases, where the evidence failed to show any diverting circum-stances as a legal excuse for the collision, the driver striking the unlighted car was guilty of contributory negligence, under the "assured clear distance" statute, in failing to drive at such a speed that he could stop in time to avoid the collision. Hart v. Stence, 219 Iowa 55, 257 N. W. 434; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Ellis v. Bruce, 217 Iowa 258, 252 N. W. 101; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Jarvis v. Stone, 216 Iowa 27, loc. cit. 33, 247 N. W. 393; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Deweese v. Iowa Transit

Lines, 218 Iowa 1327, 256 N. W. 428; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953.

In Jarvis v. Stone, 216 Iowa 27, loc. cit. 33, 247 N. W. 393, this court said:

"It is urged that the court was in error in instructing the jury that a violation of the law of the road was negligence, without telling the jury of the right of defendant to excuse such violation. There was no occasion to so instruct the jury, for the reason that no excuse was in evidence. The record contained absolutely no evidence of any fact or circumstance tending to excuse any violation of law."

In Deweese v. Iowa Transit Lines, supra, we said:

"He does not claim that he was in any manner prevented from seeing plaintiff's truck, nor does he attempt to excuse his failure to slacken the speed of his car, or his failure to be on the right side of the road because of the presence of lights on any approaching cars, or other circumstances. On the contrary, he expressly states that he saw plaintiff's truck, that he was not exceeding the speed limit, and that he was on the right side of the road. If he was exceeding the speed limit, or if he was on the wrong side of the road, the testimony given by him does not furnish evidence of any legal excuse therefor. He does not say that the effect of the oncoming lights made it impossible for him to see the truck or to determine its location.   *   *   *   We fail to see that this testimony, in any manner, excuses his violation of the statutes *   *   *.

"The evidence offered   *   *   *   in this case does not meet any one of these requirements, [for a legal excuse] and the defendant's driver does not claim that he was in any manner prevented from complying with the requirements of the statute, by any other facts or circumstances."

While the defendant in this case testifies that the night was dark; that the road was dark; and that defendant's automobile was dark in color, he does not testify that such conditions in any manner prevented him from knowing of the presence of decedent's car. On the contrary, he admits knowing of its presence because he saw the headlights of the car about 800 feet before he struck it. If it was defendant's duty to stop within the assured clear distance

for the purpose of avoiding a collision, in the absence of facts showing a legal excuse, it was all the more his duty to stop for that purpose when he saw the lights on decedent's car and knew of its presence on the road.

Defendant cites a number of cases in which the question of the driver's legal excuse for striking an unlighted car was submitted to the jury. In such cases there was evidence of diverting and other circumstances tending to show such a legal excuse in failing to see the unlighted car in time to avoid the collision. Scott, Admx, v. Hinman, 216 Iowa 1126, 249 N. W. 249; Kadlec v. Al. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103; Kimmel v. Mitchell, 216 Iowa 366, 249 N. W. 151; Carlson v. Decker & Sons, 218 Iowa 54, 253 N. W. 923.

No such facts appeared in the instant case. Defendant does not allege and does not claim any circumstances diverting his attention from the roadway. On the contrary, the undisputed facts here show that he saw the lights on decedent's car on the highway ahead in ample time to stop, if necessary, to avoid a collision.

▆ (2) It appears from the evidence that defendant was driving along a 28-foot highway, and that he saw the lights upon decedent's car for a distance of about 800 feet ahead. He did not see the Kennedy car on the east side of the road. He says he did not notice that the Scanlin car was not moving until close to it. Under the statute it was his duty to yield one-half of the roadway to decedent's car. He admits being able to see the roadway ahead of his car for a distance of about 100 to 125 feet. He also admits being able to see the edges on both sides of the highway. This was not an ordinary 18-foot pavement, but was a gravel and tarvia road 28 feet wide. There was much evidence from which the jury could find that decedent's car was within a foot of the extreme west edge of the roadway. If this was a fact, there must have been a space of about 22 feet east of the Scanlin car. If Mrs. Scanlin was standing on the roadway alongside of her car, which was not shown by the direct evidence, she must have been standing within the 5-foot space occupied by the Marvel car when it struck the Scanlin car. Therefore, the entire clear distance east of the Scanlin car and Mrs. Scanlin must have been at least 17 feet. As the roadway was 28 feet wide the jury could readily find that appellant's car crossed over the center of the highway, ran into decedent's car, and failed to yield her one-half of the roadway. Notwith-

standing his claim that the door of decedent's car must have been open, the undisputed evidence shows that he ran into and against the rear left fender of decedent's car. It necessarily follows that he collided with it. The rear fender was crushed, and there is evidence of marks and scratches on the rear end of the running board. The left front fender of defendant's car was also damaged and crushed. Although defendant contends that he struck only the open door of decedent's car, and would not have collided with it if the door had been closed, there is evidence of physical facts showing a damage to the rear left fender of the Scanlin car, making it clear that the jury could find that he would have collided with the car if the door had been closed. A round mark, like the shape of a headlight, was on the left door of the Scanlin car. It is a matter of common knowledge that the headlights on practically all cars are inside the front fenders, and that the outside edge of all cars extends some distance outside the headlights. From the evidence herein set out, the question of defendant's negligence in failing to give decedent one-half of the roadway was for the jury.

Without narrating the evidence in further detail, it is sufficient to say there was an abundance of evidence from which the jury could find that one or both of these propositions were established. It is therefore our conclusion that the question of defendant's negligence was properly submitted to the jury.

II. It is also claimed that the court erred in failing to instruct the jury in reference to defendant's right to show a legal excuse for failure to observe the "clear distance statute". As stated in the preceding division hereof, the record does not show the existence of any facts constituting a legal excuse for striking the Scanlin car. Neither does the defendant claim that he could not see decedent's car. On the contrary, he admits seeing the headlights to the car for nearly 800 feet before reaching it. It is apparent that, if defendant had complied with the assured "clear distance statute" this unfortunate tragedy would not have occurred. The rule as announced in Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552, is that, if a person violates the statute in relation to speed, he is guilty of negligence as a matter of law. But in such event, he may offer proof to show a legal excuse for his failure to observe the statutory requirements. But "if * * * he fails to furnish proof of such legal excuse, then * * * negligence is established as a matter of law". Therefore, in order to warrant the

jury in finding that a person is excused from complying with the statutory requirement, *he must furnish some evidence of a legal excuse therefor.* Such a legal excuse is defined in the case of Kisling v. Thierman, supra, as follows:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

Defendant's evidence does not meet any one of these requirements; nor does he claim that he was in any manner prevented from complying with the statute, by any other facts or circumstances. Under the facts presented by this record, therefore, defendant was was not entitled to an instruction relating to a legal excuse for a violation of the assured clear distance ahead statute. Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W. 428; Ellis v. Bruce, 217 Iowa 258, 252 N. W. 101; Hart v. Stence, 219 Iowa 55, 257 N. W. 434; Dearinger v. Keller, 219 Iowa 1, 257 N. W. 206; Albrecht v. Waterloo Construction Co., 218 Iowa 1205, 257 N. W. 183.

III. Appellant also contends that the decedent was guilty of contributory negligence in stopping her car on the highway in view of the fact that the night was dark; that the road was dark; that it was misting; and that the atmosphere was foggy. It can hardly be claimed that the stopping of this car by the deceased, under the conditions shown, for the purpose of rendering aid to a person in distress, would constitute contributory negligence.

It is the rule of law that stopping upon a paved highway is not, in and of itself, an act of negligence. 42 C. J. 1006; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Hanson v. Manning, 213 Iowa 625, loc. cit. 630, 239 N. W. 793; Harvey, Jr. v. Knowles Storage & Moving Co., 215 Iowa 35, 244 N. W. 660; Winter v. Davis, 217 Iowa 424, 251 N. W. 770; Albrecht v. Waterloo Construction Co., 218 Iowa 1205, 257 N. W. 183. The rule is stated in 42 C. J. 1006, as follows:

"The owner of a motor vehicle has the right to stop his vehicle in a street or highway; and in the absence of any governmental prohibition or restriction, to permit a motor vehicle to stand in a street or highway is not of itself illegal or negligent * * *."

The headlights of decedent's car were adequate notice to defendant of the presence of her car on the highway. There was evidence from which the jury could find that decedent's car was standing at or within a few inches of the extreme west edge of a 28-foot highway. If so, there would have been a clear space of 22 feet on the easterly side of the Scanlin car. There was evidence to show that defendant had more than the entire east half of the roadway on which to pass decedent's car. It cannot be said that decedent was guilty of contributory negligence, as a matter of law, even tho she had stepped out of her car onto the roadway, which is not shown by the evidence. There is no direct evidence that she had stepped upon the roadway. The only evidence as to her position was that of Miss McGlynn, who testified that, the last time she saw her, Mrs. Scanlin was standing on the left running board of her car with the door shut, and her hand on the doorknob. After the collision the left door was open and sprung, with the imprint of a headlight upon the door of her car. Defendant therefore claims that deceased must have been standing upon the roadway alongside of her car when struck. If so, it would not necessarily follow that she was guilty of contributory negligence. Nor does it necessarily follow that because the door of her car was found open and sprung after the accident that she had stepped off of the running board. It is just as reasonable to conclude that after she had told Miss McGlynn there was "a car coming and to watch her step", that she herself opened the car door to re-enter. A further discussion along this line is unnecessary. It is our conclusion that from the evidence presented the question of decedent's contributory negligence was at least one for the jury.

IV. It is also contended that the court erred in giving instruction No. 8. Therein, after referring to the statute requiring persons meeting each other upon a public highway to give one-half of the traveled way thereof by turning to the right, the court said:

"If you find, by a preponderance of the evidence, therefore, that at the time of the accident the defendant was violating this statute by turning into and driving upon his left hand or the west

one-half or traveled portion of the road  *  *  *  thereby striking the Scanlin car  *  *  *  such violation of the law would be prima facie or presumptive evidence of negligence on the defendant's part; and, in the absence of a justifiable excuse therefor would warrant the jury in finding the defendant negligent as thus charged."

Code 1931, section 5020, requires persons in automobiles meeting each .other on the public highway to give one-half of the traveled way by turning to the right. It is the settled rule of law in this state that a failure so to do does not constitute negligence per se, but does constitute prima facie evidence of negligence. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552.

The instruction further says: "In the absence of a justifiable excuse therefor, a violation of the statute would warrant the jury in finding the defendant negligent as charged". This is substantially the rule adopted in Kisling v. Thierman, supra. Under it the jury was warranted in finding that appellant was guilty of negligence in violating this particular statute, in the absence of any justifiable excuse therefor. The complaint made of the instruction is the failure to define the meaning of the term "justifiable excuse". The instruction, as given, may have been broader than the facts warranted, and might have permitted the jury to speculate on the question of a justifiable excuse, although there was no evidence thereof. It was therefore not prejudicial to defendant. Much of what is said in the previous division of this opinion is applicable here and, from the facts as presented, the jury was fully warranted in finding that no such justifiable excuse was shown. The instruction is good, so far as it goes, and if appellant had desired a more specific instruction it should have been requested.

V. It is also contended that the court erred in admitting the testimony of Dr. Whitaker, who attended Mrs. Scanlin both in the hospital at Webster City and later at Boone. Complaint is made of the court's ruling permitting the doctor to testify *that her death was caused by her injuries.* His testimony does not attempt to say that her death was a result of the automobile accident. He does not attempt to say how the injuries were caused. He was treating her for the injuries from which she was suffering at that time, and he simply testified that death resulted therefrom. This, of course, was technically an invasion of the province of the jury. However, in this action there was no dispute as to the cause of her

death. No other evidence in conflict therewith was offered. The evidence of her previous good health; the evidence of the accident; the serious injuries she suffered therefrom; and the evidence of her death, under the circumstances shown, all point to the inevitable conclusion that her death was the result of the injuries received. In the light of the evidence presented, the jury would have been warranted in finding that her death resulted from the accident regardless of any medical testimony. It is therefore our conclusion without, in any manner, attempting to change the rule of evidence in relation to expert testimony, that, if the ruling of the court, in admitting the evidence of Dr. Whitaker, was erroneous, it was error without prejudice. A judgment will not be reversed for an error committed by the lower court unless appellant has been prejudiced thereby. Code 1931, sections 11228, 11548; Tuck v. Singer Mfg. Co., 67 Iowa 576, 25 N. W. 812; Blackburn v. Powers, 40 Iowa 681; Lucas v. Jones, 44 Iowa 298; In re Bradley, 117 Iowa 472, loc. cit. 478, 91 N. W. 780; Smith v. Eaton, 50 Iowa 488.

VI. It is also contended that the court erred in instructing the jury on the measure of damages; that while they could not allow the expenditure made for funeral expenses, as damages in this connection, "the use of or interest upon the money so expended between the time of her death and the time when in the course of nature the estate would probably be called upon to make the expenditure" could be allowed. It is contended that under this instruction the jury could allow 8 per cent compound interest upon the money expended, and was therefore erroneous, as it would exceed the amount asked for. The rule supporting such an instruction is laid down in Brady, Admx, v. Haw, 187 Iowa 501, 174 N. W. 331, 7 A. L. R. 1306.

It is apparent from the verdict of the jury that no greater amount was allowed than was requested. The amount asked for in the petition on this element of damages was $340. The court also told the jury, generally, that it could not allow plaintiff any more than the amount prayed for in his petition. It is fair to assume the jury followed the instructions of the court thereon. The court's instruction on the measure of damages was correct so far as it went. If the defendant had desired a more specific instruction thereon, it should have been requested.

A few other errors are alleged. We have given them all careful consideration, but find no merit therein. For the reasons here-

inabove expressed, the judgment of the lower court is hereby affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, POWERS, PARSONS, DONEGAN, and HAMILTON, JJ., concur.