HANS THORDSON, Appellee, v. MERLYN McKEIGHAN, Appellant.

No. 46430.

DECEMBER 12, 1944.

Putnam, Putnam, Fillmore & Putnam, of Des Moines, and Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellant.

Ross, Everest, Geiser & Johnson and John Hess, all of Council Bluffs, for appellee.

WENNERSTRUM, J.— Plaintiff, Hans Thordson, brought an action at law against the defendant, Merlyn McKeighan, to recover damages for personal injuries and property damage sustained as the result of a collision between plaintiff's automobile and defendant's truck. The defendant denied any liability. The trial court submitted to the jury the question of the defendant's liability, and also other pertinent questions. The jury returned a verdict for the plaintiff. The defendant has appealed.

The only facts that the respective parties agree upon are that there was a collision between the car driven by the appellee and the truck driven by the appellant and the position of the vehicles after the collision. The appellee contends that he had been on his right-hand side of the road at all times prior to the collision and maintains that the appellant's truck ran into his automobile. Appellee also contends that the truck was being operated on the wrong side of the road immediately prior to the collision. The appellant asserts that, as he was proceeding on his own right-hand side of the road, the appellee drove his automobile toward him, that appellee's car was out of control, and that it struck the appellant's truck, forcing it to the place on the road where the two vehicles came to a stop. The appellant maintains that the physical facts are such as to indicate appellee's contributory negligence and that there should be no recovery by the appellee.

Despite the fact that there is a pronounced variance between the parties as to the location of their respective vehicles on the road immediately prior to the time of the collision, we shall endeavor to set forth the factual situation as disclosed by the record, and also set out portions of the evidence that the parties contend give support to their contentions.

The accident occurred on April 11, 1942, in Pottawattamie County, Iowa, at a point approximately seventeen miles northeast of Council Bluffs, on a highway which runs approximately in an easterly and westerly direction. At or near the point of the accident there is a gradual incline as the road proceeds to the east. Just beyond the crest of the hill the road branches in two directions, the main branch of the fork curving to the north or to the left, while the other branch continues more or

less in an easterly direction. The collision occurred approximately thirty or forty feet west, below the crest of the hill. Just prior to the collision the Thordson car was being driven in a southerly direction along the curved portion of the forked road and was proceeding into the east-and-west main road. The appellant was driving his truck east on the east-and-west highway and up the incline. This road was a rock or gravel county highway and the traveled portion was approximately twenty-four feet in width.

The appellant, as previously stated, was driving an empty truck which was of the approximate weight of 6,500 pounds. Testimony shows that the appellant was driving the truck at a speed variously estimated by certain witnesses at between thirty and forty miles per hour. The appellant and his witnesses contend that he was traveling on the south or right-hand side of the highway as he proceeded east. Appellant's testimony is to the effect that he saw the Thordson car some one hundred to one hundred twenty-five feet away, as it was coming around the curve from the north and proceeding west. He testified that at that time the Thordson car was traveling about sixty miles per hour, that it was swaying and swerving as it proceeded on the curve and onto the east-and-west highway. He maintained that just before the accident, and when the vehicles were from ten to twenty feet apart, the appellee turned to the north, or to his right-hand side of the road. The left front part of the truck and the left front of the automobile came in contact, and when the vehicles came to a stop the appellee's car was approximately parallel with the grader ditch with the greater portion of the car on the highway. The appellant's truck was approximately at right angles to the Thordson car. The photographs show that the truck, when stopped, was crossway of the highway; that is, the front of the truck was pointed to the north. It is the appellant's contention that the front end of the truck was hit by the appellee's car and that the force of the impact swung it around to the position that it is shown to have been in when it came to a stop.

The appellant and his two brothers, Darrel and Harvey McKeighan, and a small child, four years of age, were in the truck. The child was sitting on Harvey McKeighan's lap. All

the occupants of the truck were thrown out of the right door and the evidence discloses that the appellant's jacket, which he was wearing, became caught underneath the left rear wheel of the appellee's car.

The weight of the appellee's automobile was approximately 2,600 to 2,700 pounds. Appellee estimates his own speed, at or immediately prior to the collision, to have been twenty-five to thirty miles per hour and that as he proceeded around the curve from the north and continued westward he was traveling on the right edge of the graveled portion of the highway. He testified that as he continued westward he first observed the appellant's truck approaching him when it was about six hundred feet away; that when the vehicles were about one hundred fifty feet apart he observed that the appellant was not looking at the road and was either lighting a cigarette or talking to one of the occupants of the truck.

It is the appellant's contention—and there is considerable testimony in support of his claim—that there were tire marks leading back from the rear of the appellee's car. Certain witnesses testified that these tire marks showed that the appellee's car had been traveling to the left of the center of the road as he proceeded west, and on the appellant's side of the highway. It is claimed that the photographs introduced in evidence showed tire marks leading back from the automobile to a point to the left of the center of the road. However, our observation of the exhibits certified to this court does not bear out the claim that the photographs substantially show these marks.

I. It is the appellant's strenuous contention that, because of the claimed showing of the tire markings on the photographs, and further, because of testimony as to these markings on the highway, the physical facts were such that it was the duty of the court to direct a verdict for the appellant. It is appellant's claim that the appellee was conclusively shown to have been on his wrong side of the road at or immediately prior to the collision. It is true that this testimony as to the tire marks gives some support to this contention. However, we are unable to reach the conclusion that this testimony is so conclusive as to cause us to hold that the appellee was guilty of contributory negligence as a matter of law. We believe it was for the jury

to give such consideration as it saw fit to the evidence as to the tire marks. As bearing upon our ruling that the question as to the tire marks and the physical facts generally was properly submitted to the jury, see Ryan v. Amodeo, 216 Iowa 752, 249 N. W. 656.

We also feel that the jury had a right to give consideration to the fact that, as shown by the evidence, the appellee's car was apparently struck somewhere between the left front fender and the left door. The automobile was of a two-door design. The right front wheel of the truck was against the left front side of the car when the vehicles stopped. We believe it was a matter for the jury to decide whether or not a truck weighing approximately 6,500 pounds could have been struck by the appellee's car and dragged to the position as shown by the photographs. Especially is this true when we consider that the damage to the truck was on its left front side and the car was damaged at or near its left door. Appellant's citation of authorities, namely, Chicago, R. I. & G. Ry. Co. v. Wisdom, Tex. Civ. App., 216 S. W. 241; Nashville, C. & St. L. R. v. Perry, 13 Tenn. App. 268; Niemi v. Boston & Maine R. R., 87 N. H. 1, 173 A. 361, 362; Burns v. Weyker, 218 Wis. 363, 261 N. W. 244; Lavigne v. Nelson, 91 N. H. 304, 18 A. 2d 832; Scott v. Hansen, 228 Iowa 37, 289 N. W. 710; Pazen v. Des Moines Transp. Co., 223 Iowa 23, 272 N. W. 126; Bowermaster v. Universal Producing Co., 221 Iowa 831, 266 N. W. 503; Potter v. Robinson, 233 Iowa 479, 9 N. W. 2d 457; Peterson v. Phillips Coal Co., 175 Iowa 223, 157 N. W. 194, set forth good law under the facts shown in those particular cases but we do not see their applicability to the facts in this case. We hold that, under the evidence and the record as presented, the court properly submitted the case to the jury on the question of the appellee's contributory negligence. We do not deem it necessary to cite authorities to the effect that the question of contributory negligence was a matter for the jury.

■ II. Appellant makes complaint of portions of Instruction No. 15 which was submitted by the court. In this instruction the court set out as one of the grounds of negligence that the appellant failed to keep a proper lookout for persons and vehicles then using the road. In this instruction the court

commented on the duty of the defendant to keep a proper lookout, and in a separate paragraph therein made the following statement:

"In this connection you are instructed that under the law no person shall drive a vehicle when it is so loaded or when there are in the front seat such number of persons exceeding three as to obstruct the view of the driver to the front or sides of the vehicle. And it is the duty of the driver of a motor vehicle at all times to exercise the caution of a reasonably prudent and careful person, and bring or have his car under proper control."

It will be observed that this part of the instruction was incorporated in a general instruction relative to proper lookout. The statute referred to in this last-quoted portion is found in section 5031.02 of the 1939 Code, and is as follows:

"Obstruction to driver's view. No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.

"No passenger in a vehicle shall ride in such position as to interfere with the driver's view ahead or to the sides, or to interfere with his control over the driving mechanism of the vehicle."·

A study of this section has caused us to reach the conclusion that the part thereof referred to in the instruction has reference to conditions that would prevent the driver from having a proper view. It will be noted that this statute refers to the utilization of a vehicle in such a manner, or the seating of such number of persons in the front seat, "exceeding three, *as to obstruct the view of the driver to the front or sides of the vehicle* * * *." The fact that this statute, in part, refers to conditions that will make impossible proper observation by the driver is a proper feature to comment on in an instruction regarding lookout. It has been suggested by the appellant that the inclusion of the last-quoted portion of the instruction was a submission of a new

and separate ground of negligence which appellee had not pleaded. We cannot agree with this contention.

III. The appellant makes further complaint of a portion of Instruction No. 15. The part of this instruction to which complaint is directed is as follows:

"If you find by a preponderance of the evidence that the defendant in this case at and immediately before the accident failed to keep such a lookout ahead in the direction of travel, and to each side of said highway, and failed to exercise his powers of observation as a reasonably prudent and cautious person would have exercised under like or similar circumstances, *and failed to see or notice the car of plaintiff* in his situation as shown by the evidence, then you have a right to find that such driver was guilty of negligence as charged in this specification of plaintiff's petition."

It will be observed that the italicized portion of this instruction referred to is a part of the several things that must be found by the preponderance of the evidence in order to hold the appellant guilty of negligence. We are unable to hold, as is suggested by the appellant, that this part of the instruction placed an additional and greater burden on him than the law required. The entire instruction must be considered together in order to obtain its full portent. A separated and isolated portion of an instruction should not be made the basis of an attack when it can and should be considered in connection with the instruction as a whole. Rogers v. Jefferson, 226 Iowa 1047, 1051, 285 N. W. 701.

IV. There is a further attack made by appellant to another portion of Instruction No. 15. It is hereinafter set forth and the part of which complaint is made is italicized:

"But, if on the other hand you find from the evidence that at the time and place in question defendant kept a lookout, as hereinbefore defined for other cars or objects in the path of his motor vehicle and on said highway, *and that in so doing he exercised such care and such reasonable lookout as an ordinarily careful and prudent person would have exercised under like circumstances, and that in so doing he exercised the caution with respect to the operation of said motor truck that a reason-*

*ably prudent and careful person would have exercised, and had or brought his truck under proper control,* then the defendant would not be negligent upon this ground.''

It is our conclusion that the jury should not have been instructed that a finding in respect to lookout was to be conditioned upon the fact that appellant operated his truck as a reasonably prudent and careful person *and* that he brought it under *proper* control. The exercise of ordinary care in maintaining a lookout does not necessarily include operating a vehicle as a reasonably prudent person and bringing it under proper control. As bearing upon the matter here discussed, see Keller v. Dodds, 224 Iowa 935, 944, 947, 277 N. W. 467, and cases cited.

V. A further complaint is made by the appellant in regard to Instruction No. 21. In this instruction the court properly advised the jury that a failure to yield one half the traveled way by turning to the right would be prima facie evidence of negligence, but added and conditioned a finding to this effect with the following words, to wit: *"and if not excused would be negligent."* There was no evidence presented relative to legal excuse and to so instruct as the court did was error. Keller v. Dodds, supra, 224 Iowa 935, 947, 950, 277 N. W. 467, and cases cited.

VI. Appellant also makes complaint in regard to Instruction No. 25, which referred, in part, to consideration to be given by the jury to mortality tables and the appellee's life expectancy. It is contended that the court failed to state that the consideration of life-expectancy tables should be considered in the light of the appellee's injured condition. It is true that in this instruction reference is made to appellee's injuries but the reference to these injuries does not necessarily include the consideration of them in connection with the court's instruction in regard to the life-expectancy tables. We have condemned similar instructions where a court failed to instruct in regard to the expectancy table based on the there present condition of a party. We cannot approve this particular instruction as submitted to the jury. Hughes v. Chicago, R. I. & P. Ry. Co., 150 Iowa 232, 237, 129 N. W. 956; Scott v. Chicago, R. I. & P. R. Co., 160 Iowa 306, 319, 141 N. W. 1065.

418

VII. The trial court, in submitting three requested instructions, prefaced each of these instructions with the following statement, to wit: "I give you the defendant's following requested instruction." After these three instructions the court then continued the set of instructions with the following statement: "I continue with further instructions of the Court." We do not approve of this manner of instructing. All the instructions as submitted are those of the court and there should be no indication that any of them is of less importance than any other. We said in Scott v. Chicago, M. & St. P. R. Co., 68 Iowa 360, 362, 24 N. W. 584, that the submission of instructions in this manner was not reversible error. However, we do here express our disapproval of this practice. It should not be followed. Johnson v. McVicker, 216 Iowa 654, 659, 247 N. W. 488; Carlson v. Sanitary Farm Dairies, 200 Minn. 177, 273 N. W. 665, 668.

VIII. Instruction No. 16 stated that "each [driver] had a right to assume that the other would in all respects obey the law of the road governing the use of said highway by motor vehicles." We are of the opinion that this statement should have been qualified by a statement to the effect that the above would be true unless the drivers of the vehicles knew or in the exercise of ordinary care should have known otherwise.

In the light of the nature of the instructions concerning which we have commented we have concluded that we must reverse.—Reversed.

MANTZ, C. J., and SMITH, MILLER, and HALE, JJ., concur.

MULRONEY and BLISS, JJ., dissent.

MULRONEY, J. (dissenting)—I respectfully dissent. The instruction errors which are the basis of the majority opinion are, I feel, too technical to warrant reversal. Each party to a law action is entitled to an intelligent presentation of his theory of the case and all the issues that are pleaded and sustained by proof, together with the principles of law applicable to the facts of the case. I do not think the correctness of instructions should be determined by the technical tests so often put forth by the losing litigant, nor should the reviewing court be inclined to

scan the use of words in instructions with the technical eye of a partisan lawyer. They should be examined as a whole and if they appear reasonably fair and complete, then we must think that a jury of reasonably fair-minded men and women were not misled. More than thirty-four years ago Justice Weaver, in Elliott v. Capital City State Bk., 149 Iowa 309, 319, 128 N. W. 369, 372, stated:

"* * * that no set of instructions yet framed by a trial court could stand the test of an appeal if the severely critical and technical tests for which appellant contends were to be adopted and enforced by us." He pointed out that: "They are addressed to jurors unskilled in law and unversed in legal phraseology. * * * The standards by which instructions are to be judged are not those which might properly be applied to a technical treatise prepared for the use of the profession."

In instruction 15 the court instructed as to the third charge of negligence, that defendant failed to keep a proper lookout. In the second paragraph of the instruction the court defined the duty placed upon the defendant "to keep a proper lookout ahead in the direction of travel and to each side of said highway and see and observe and heed road conditions, such as would be observed and exercised by reasonably cautious and prudent persons under like and similar circumstances, and such as would be reasonable and proper * * *."

In the third paragraph the court commented upon the law that forbids the operation of a motor vehicle "when there are * * * such number of persons exceeding three as to obstruct the view of the driver to the front or sides of the vehicle." And in this paragraph the court stated: "*And it is the duty of the driver of a motor vehicle at all times to exercise the caution of a reasonably prudent and careful person, and bring or have his car under proper control.*" (Italics supplied.)

This paragraph the majority hold was not reversible error under the facts of this case where there was evidence of three adult persons and a child in the front seat of defendant's truck. With that conclusion I agree, but I wish to emphasize that under the special facts of this case the majority hold it proper

for the court, in this lookout instruction, to comment on the law forbidding a certain manner of operation, and proper for the court to then state the duty of the driver to exercise the caution of a reasonably prudent and careful person and bring or have his car under proper control.

In the fourth paragraph of the instruction the court stated to the jury that if they found from a preponderance of the evidence that defendant failed in his duty "to keep such a lookout ahead in the direction of travel, and to each side of said highway, and failed to exercise his powers of observation as a reasonably prudent and cautious person would have exercised * * *," then the jury would "have a right to find that such driver was guilty of negligence as charged in this specification of plaintiff's petition." This paragraph is also upheld by the majority opinion and I agree with the conclusion. I mention it only to show its bearing on the next and last paragraph of the instruction which the majority of the court hold erroneous.

In this last paragraph the trial court, having defined the lookout duty, and having commented on a pertinent statute relative to operation with obstructed view, and having stated that failure to observe the duty to keep proper lookout would warrant a finding of defendant's negligence, now undertakes to state that if the jury finds the defendant "kept a lookout, as hereinbefore defined," then the "defendant would not be negligent upon this [failure of proper lookout] ground." Here the court must necessarily tell the jury that if they find that defendant observed the rules laid down in the previous paragraphs, then he would not be negligent. This paragraph is as follows:

"But, if on the other hand you find from the evidence that at the time and place in question defendant kept a lookout, as hereinbefore defined for other cars or objects in the path of his motor vehicle and on said highway, *and that in so doing he exercised such care and such reasonable lookout as an ordinarily careful and prudent person would have exercised under like circumstances, and that in so doing he exercised the caution with respect to the operation of said motor truck that a reasonably prudent and careful person would have exercised, and had or*

*brought his truck under proper control,* then the defendant would not be negligent upon this ground.'' (Italics supplied.)

The majority hold that the above instruction improperly conditions a finding with respect to lookout ''upon the fact that appellant operated his truck as a reasonably prudent and careful person *and* that he brought it under *proper* control.'' The italicized portion of the instruction is the part assailed. In the part that is not in italics the jury is told that a condition is that the jury find the defendant kept a lookout as hereinbefore defined; then that, ''in so doing,'' namely, keeping a lookout, ''he exercised such care and such reasonable lookout as an ordinarily careful and prudent person would have exercised under like circumstances.'' This is the duty defined in the second paragraph above referred to, about which there can be no question. The next condition is: ''and that in so doing,'' namely, keeping a lookout, ''he exercised the caution with respect to the operation of said motor truck that a reasonably prudent and careful person would have exercised and had or brought his truck under proper control.'' This is almost the identical language of the second sentence in the third paragraph of the instruction where the majority approved the following statement as to the law with regard to driving with more than three persons in the front seat:

''And it is the duty of the driver of a motor vehicle at all times to exercise the caution of a reasonably prudent and careful person and bring or have his car under proper control.''

It seems to me utterly inconsistent to approve the statement of duty contained in the third paragraph and reject as an improper condition the statement that the finding that observance of that duty is necessary before defendant can be held to be free from negligence. Section 5031.02, Code of 1939, quoted in the majority opinion, deals with driving or operating a motor vehicle. The majority hold, and I think rightly, that a comment upon this law has its proper setting in the lookout instruction for it deals with obstructions to the driver's view. Perhaps the instruction should have been amplified somewhat, but I do not feel the jury was misled. The statute places a duty not to operate an overloaded vehicle so as to obstruct the

driver's view. It was for the jury whether it was being so operated here. The court commented on the statute and in the next sentence stated the duty was that which a reasonably prudent and careful person would exercise. I would hold the condition in the last paragraph of the instruction was not reversible error.

II. In instruction 21 the court instructed as to the duty of the plaintiff to yield one half of the traveled way to the defendant when meeting the truck. In the course of the instruction the court stated:

"* * * failure to yield one-half of the traveled way to defendant on the part of plaintiff would be prima facie evidence of negligence; *and if not excused* would be negligent, and if such failure on his part contributed in any way or in any degree to the injuries of which plaintiff complains, plaintiff cannot recover." (Italics supplied.)

The complaint is that by using the words "if not excused" the court submitted to the jury the issue of legal excuse which is unsupported by any record evidence.

Throughout this instruction the court is dealing with the duty of the plaintiff to yield one half of the highway in order to be relieved of the charge of contributory negligence that would defeat his right of recovery. In the first part of the instruction the court rightly told the jury that failure to so yield one half the highway on meeting the defendant would be prima facie evidence of negligence. Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Lukin v. Marvel, 219 Iowa 773, 259 N. W. 782.

In instruction 14, about which no complaint was made, the court instructed as to the defendant's similar duty to yield one half of the highway on meeting the plaintiff. Here, too, the court stated that defendant's failure to so yield "would be prima facie evidence of negligence on his part, *and in the absence of justifiable excuse therefor*, would warrant the jury in finding the defendant negligent as charged." (Italics supplied.)

It is clear that the court placed the same degree of care on both drivers with respect to yielding half the highway to

the other. While the use of the word "excuse" is somewhat unfortunate, I do not think there was any prejudicial error. The court was obviously defining the term "prima facie evidence," which implies evidence sufficient to support a verdict establishing the fact it is adduced to prove, in the absence of other evidence by way of explanation. 23 C. J. 9, section 1735. In Lukin v. Marvel, supra, 219 Iowa 773, 783, 259 N. W. 782, 787, we held the defendant was not prejudiced by an instruction stating that if defendant failed to yield one half the road " 'such violation of the law would be prima facie or presumptive evidence of negligence on the defendant's part; *and in the absence of a justifiable excuse* therefor would warrant the jury in finding the defendant negligent as thus charged.' " (Italics supplied.) And in Jakeway v. Allen, 227 Iowa 1182, 1185, 290 N. W. 507, 508, we held that defendant was not prejudiced by a somewhat similar instruction which would warrant a finding of negligence if this law of the road was violated "unless it was shown by the greater weight or preponderance of the evidence that under the circumstances such offending operator was justified and in the exercise of ordinary and reasonable care." In this Jakeway case the court, speaking through Justice Hale, observed:

"But under the particular facts, there being no evidence of justification or any such issue, nor any attempt to show that the violation charged was not negligence, the instruction would not, in our opinion, in this case be prejudicial."

The two instructions, in effect, tell the jury that each driver must yield half the road to the other and a failure to so yield on the part of either will be prima facie evidence of negligence, which, in the absence of excuse, will justify a verdict against the offending party. Both drivers contended that they were at all times to the right of the center of the highway. Each charged the other with the failure to yield half of the road. Since there was no attempt on the part of either driver to excuse any alleged violation of this law of the road, then neither driver would be prejudiced by instructions that allowed verdicts of negligence against an offending driver, unless excused.

For a case much in point, see Yeary v. Holbrook, 171 Va. 266, 288, 198 S. E. 441, 451, where, after the plaintiff's verdict,

it was urged that the contributory-negligence instruction was erroneous. With reference to the claimed error, the Virginia Supreme Court stated:

"The case presents two clear-cut theories. Plaintiff's theory is that defendants' truck was traveling at an unreasonable speed on the wrong side of the curve and struck his Chevrolet coupe when it was as far as it could safely travel on the right-hand side of the highway. The defendants' theory, supported by the testimony of the witnesses introduced by them, was that the plaintiff was driving his coupe on the outside of the curve and struck their truck when it was as far on the truck's side of the highway as it could have been driven with reasonable safety. The jury had to accept one or the other of these theories, * * * Either the acts of the driver of defendants' truck were the sole proximate cause of the injury, or the acts of the driver of the coupe were the sole proximate cause. Instructions on contributory negligence, even if incorrect, could not have misled the jury."

III. Instruction 25 tells the jury what they should consider in connection with the claim for damages by reason of "permanent injury for loss of earning capacity and ability to earn." After defining the term "permanent injury," as meaning "an injury which the jury may reasonably infer from the evidence * * * will continue with the plaintiff for and during the period of his natural life," the court then amplified the definition somewhat, and closed the second paragraph of the instruction with a charge that if the jury found that the defendant's injury was permanent "then you will fix the amount of damages you will allow plaintiff for such permanent injury, and in fixing the amount of damages * * * you must exercise cool, calm, and deliberate judgment * * * taking into consideration the nature of the injury, the nature of the disfigurement, and loss of use or function of some part of his body, and such other facts or circumstances as may be shown by the evidence * * *."

No objection was made to the second paragraph but the objection is to the third paragraph of the instruction, which is as follows:

"In this connection it has been stipulated that under the so-called mortality tables, a person of the age of plaintiff has a life expectancy of 29.62 years. These tables of mortality are based on the observed expectancy among persons in ordinary pursuits and in ordinary condition of health, and are not conclusive, but you may in determining how long plaintiff may live, take into consideration his expectancy as shown by said tables, his prior health, and all evidence which in your judgment has a bearing thereon, and determine from all of the evidence the length of time the plaintiff may live. This and the other evidence offered thereon to be considered as bearing upon the length of time plaintiff may be permanently injured, if at all, and the length of time he may suffer loss of earning capacity, or ability to earn by reason of such injury, if any such has been shown by the evidence."

The objection to the above portion of the instruction, which is upheld by the majority opinion, is that the court omitted to tell the jury they must consider his life expectancy with reference to his injured condition and not his physical condition and health prior to the accident. Such an objection seems to me to be highly technical. Defendant argues that it clearly appears from the "phraseology" of the instruction that the life expectancy "was dependent upon how long he would have lived had he not been injured." It does not so clearly appear to me. The jury is told that in fixing the amount they are to allow for permanent injury they must take into consideration the nature of the injury. The jury is told that the "so-called mortality tables [show] a person of the age of plaintiff has a life expectancy of 29.62 years," and that, though the tables are not conclusive, the jury can consider what they show, together with all other evidence having a bearing thereon, and "determine from all of the evidence the length of time the plaintiff may live." In Scott v. Chicago, R. I. & P. R. Co., 160 Iowa 306, 319, 141 N. W. 1065, 1071, cited in the majority opinion, we held:

"It is proper to consider the physical condition, habits, and the like prior to the injury as bearing on the question as to whether a strong, rugged person would not be likely to live longer than a delicate person, with the same injuries. This

matter should be considered, with his condition after being injured, in determining how long he would be likely to live in the condition he is in with his injuries.''

In Hughes v. Chicago, R. I. & P. Ry. Co., 150 Iowa 232, 238, 129 N. W. 956, 958, the other authority on this proposition cited in the majority opinion, the court held the mortality-table instruction bad and stated that the following requested instruction should have been given:

'' 'Testimony has been received in evidence which tends to show that the expectancy of life of a man fifty-four years old, according to the tables of mortality, is fifteen years. These tables of mortality, however, do not necessarily apply to the plaintiff, but are based upon the observed expectancy among persons in ordinary pursuits and in ordinary condition of health, and in determining the expectancy of plaintiff you must take into consideration the condition of his health at the present time so far as shown by the evidence or so far as you have been able to observe the same, his prior habits with reference to the use of intoxicating liquors, as well as all other facts and circumstances in evidence and bearing thereon.' ''

Under the instruction given the jury was told to consider the ''nature of the injury'' and ''all the evidence'' and determine how long plaintiff would live ''from all the evidence.'' Although plaintiff's injuries were quite serious, there was no direct evidence that they were such as to shorten his life. If the jury so considered them, then the charge told the jury to conclude how long plaintiff would live from all the evidence. The charge here is quite different from the one condemned in Scott v. Chicago, R. I. & P. R. Co., supra, 160 Iowa 306, 316, 141 N. W. 1065, 1069, where the court stated the plaintiff's expectancy was to be considered, ''as shown by the Carlisle Life Tables, and the length of time he would have reasonably been expected to live but for the injuries of which he complains.''

I would hold the instruction was not subject to the objection urged. But there is another point that I would like to bring out. Even if the instruction is subject to the interpretation that the mortality tables are to be considered with reference

only to plaintiff's condition before the injury, I am not sure it would be incorrect. Surely it would not be incorrect if the instruction can also be interpreted to confine consideration of the mortality tables to the question of loss of earning capacity or ability to earn by reason of such injury. I think it is susceptible to that interpretation in the last sentence of the quoted paragraph. The court, in instruction 24, about which there is no objection, had instructed fully with regard to "pain and suffering, past, present and future." In instruction 24 the court is instructing with regard to permanent injuries and loss of earning capacity and ability to earn. While damages for future pain and suffering would be recoverable for only so long as plaintiff would live in his injured condition, I think damages for future loss of ability to earn, resulting from injuries, should be based on his expectancy before the injuries were suffered. Admittedly that is the rule if he were killed. If so interpreted, then neither Scott v. Chicago, R. I. & P. R. Co., supra, nor Hughes v. Chicago, R. I. & P. Ry. Co., supra, is in point.

IV. I agree with the criticism of the instructions mentioned in the last two divisions of the majority opinion, but since the majority do not hold reversible error occurred in the giving of these instructions, I will not comment on them. In passing, I might state that the criticism of instruction 16, contained in the last division of the majority opinion, with which I agree, does not embody the complaint of the defendant to this instruction.

I would hold that upon the whole record there is no reversible error, and therefore I would affirm the judgment.

BLISS, J., joins in this dissent.